UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ASEGEDECH N. JIMA,<br><br>Plaintiff,<br><br>vs.<br><br>SMITHFIELD PACKAGE MEAT CORP,<br><br>Defendant. | 4:23-CV-04145-RAL<br><br>OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS, DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL, AND 1915 SCREENING FOR DISMISSAL |

Plaintiff Asegedech N. Jima filed a pro se lawsuit alleging employment discrimination and harassment.[1] Doc. 1. Jima moves for leave to proceed in forma pauperis. Doc. 2. Jima also moves for appointment of counsel. Doc. 4.

I.  **Motion for Leave to Proceed In Forma Pauperis**

A federal court may authorize the commencement of any lawsuit without prepayment of fees when an applicant submits an affidavit stating he or she is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1). "[I]n forma pauperis status does not require a litigant to demonstrate absolute destitution." Lee v. McDonald's Corp., 231 F.3d 456, 459 (8th Cir. 2000).

---

[1] Jima does not specify under which federal statutes she sues the defendant. See generally Doc. 1. Construing her complaint liberally, this Count finds that Jima brings claims under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990. See id. Jima's complaint alleges that she suffered many injuries while working at Smithfield; the Occupational Safety and Health Administration sets and enforces workplace health and safety standards. See Doc. 1 at 1, 4, 8; Occupational Safety & Health Admin., *OSHA Worker Rights and Protections*, https://www.osha.gov/workers (last visited Apr. 1, 2024). Jima does not mention the Occupational Safety and Health Act in her complaint, and the Occupational Safety and Health Act does not provide a private right of action for employees. See Doc. 1; Chew v. Am. Greetings Corp., 754 F.3d 632, 637 (8th Cir. 2014); Kohrt v. MidAmerican Energy Co., 364 F.3d 894, 901–02 (8th Cir. 2004). Thus, this Court does not construe Jima's complaint as alleging a claim under the Occupational Safety and Health Act.

But in forma pauperis status is a privilege, not a right. Williams v. McKenzie, 834 F.2d 152, 154 (8th Cir. 1987). Determining whether an applicant is sufficiently impoverished to qualify to proceed in forma pauperis under § 1915 is committed to the sound discretion of the district court. Cross v. Gen. Motors Corp., 721 F.2d 1152, 1157 (8th Cir. 1983). After review of Jima's motion to proceed in forma pauperis, Doc. 2, this Court finds that she has insufficient funds to pay the filing fee. Thus, Jima's motion for leave to proceed in forma pauperis, Doc. 2, is granted. This Court now screens Jima's complaint under 28 U.S.C. § 1915.

## II.   1915 Screening

### A.   Factual Background

Jima alleges that, while employed at Smithfield Package Meat Corp. (Smithfield), she was harassed, abused, and discriminated against because of her disability. Doc. 1 at 1, 4, 8. Jima worked at Smithfield for eleven years, and she claims to have suffered many injuries when working at Smithfield. Id. at 1, 4.

On March 19, 2021, Jima had her middle and ring finger on her left hand sliced by one of the machines at Smithfield. Id. at 4. The cut severed her nerves and tendons in her two fingers. Id. Her hand was bleeding, but the company refused to take her to the emergency room, instead requiring her to drive herself. Id. On March 22, 2021, Jima went to a hand specialist for surgery. Id. She was informed that her injury would take approximately four months to heal. Id. Jima alleges that her doctor told her that Smithfield reported that Jima purposely put her hand in the machine. Id.

Jima claims that she was suspended from work for seven days because of her hand injury. Id. She returned to work after the suspension, but she was only able to use her right hand. Id. But "[t]he company gave [her] work without [her] work restriction." Id. The doctor had provided her

a "yellow cheese sponge" to use, which would lift her left arm and prevent swelling. Id. Jima alleges that Smithfield would not allow her to use the sponge, which caused her extreme pain. Id.

Jima alleges that the company was interfering with her medical treatment. Id. On May 17, 2021, Jima had a medical appointment for her hand. Id. She claims that Emily, an employee of Smithfield, attended Jima's medical appointment without Jima's permission. Id. Jima claims that Emily acted as if she were the doctor and therapist by pushing the medical professionals. Id. Emily also removed Jima's five-pound lifting restriction within six weeks, which Jima claims was improper because her hand had not healed and she still needed a brace on her left hand. Id. Jima attended her next medical appointment with an interpreter, and she learned that the five-pound restriction was lifted because Emily had called the doctor and informed them that Jima's hand was healing. Id.

On April 8, 2021, Jima was working the Covid monitor job in the first aid department at Smithfield. Id. Two employees of Smithfield, Derek and Alfonzo, called first aid and told Jima to go to the bacon department. Id. Jima asked if she could go to the bacon department tomorrow because it was very cold and she did not have warm clothes in her locker. Id. at 4–5. She claims that Derek and Alfonzo were pointing their fingers in her face and yelling that "we are going to fire you!" Id. at 5. Jima was kicked out by security. Id. She was told to report to human resources when she returned to work the next day; she claims that she was suspended for three days without being able to discuss the situation. Id.

On June 7, 2021, Emily attended Jima's medical appointment without her permission. Id. Jima said that she did not want Emily to attend her appointment because she only needed the doctor and interpreter. Id. Emily insisted on attending the appointment for Jima to get medical treatment and workers' compensation to cover her medical expenses. Id. Jima claims that Emily took off

3

her fifteen-pound lifting restriction, but Jima's hand had not healed and was still in a brace. Id. Emily informed Jima that her next and last medical appointment would be in July 2021. Id. When Jima returned to work, she was called from first aid because she refused to let Emily attend her doctor's appointment. Id. Derek and Alfonzo again yelled and pointed at her face. Id. She claims that she was harassed and abused for refusing to allow Emily to attend her doctor's appointment. Id.

Jima claims that the company stopped her medical treatment for two months. Id. She went to her family doctor because she had extreme pain in her hand. Id. The family doctor issued a work restriction to not use her left hand. Id. Smithfield denied her work restriction and did not pay her because they did not have a job for her. Id. Jima's family doctor referred her to another specialist doctor and made an appointment for her. Id. The union representative, Tina, informed Jima that Emily cancelled these appointments on the date of her appointment. Id. Jima continued to see her family doctor for treatment for two additional months. Id.

Smithfield then sent Jima to see a workers' compensation doctor, Dr. Christina Jost, who issued a restriction against Jima using her left hand. Id. Dr. Jost also conducted a bone scan of Jima's hand; the scan reportedly revealed that Jima had complex regional pain syndrome, which she claims is permanent and not curable. Id. She alleges that "[a]fter the bone scan result the company doesn't worry about lifetime injuries and pain." Id. She received a call from Emily and Candra, another employee of Smithfield, informing Jima that she had to tell them what the doctor said about her disease. Id.

On September 3, 2021, Jima sustained an injury to her right shoulder while working at Smithfield. Id. at 6. She claims that she had used her right arm frequently because she could not use her left hand; she alleges that the frequent use caused the injury. Id. She claims that Smithfield

4

sent her to the "hog kill department and the[y] gave [her a] wizards knife job without [her] work restriction." Id. The knife job was a two-handed job that she had not previously done. Id. She requested to change jobs, but the company refused and told her that she was to go home if she did not want this job. Id. She spoke with her supervisor and showed him her hand injury; he transferred her to the spinal cord job. Id. The spinal cord job required her to use a straight knife to take out the spinal cord of a pig that traveled very quickly down the line. Id. The spinal cord job required her to lift her hand above her head to remove the spinal cord for nine hours every day. Id.

On September 9, 2021, Smithfield opened a claim for her shoulder injury and sent her to Dr. Jost. Id. Jima requested a different doctor because Dr. Jost's specialty was rehabilitation, but Smithfield refused her request. Id. Dr. Jost ordered an MRI on Jima's right shoulder, which revealed that the injury was from overuse. Id. Smithfield denied the injury to the right shoulder and closed the claim after six months of treatment. Id. She also claims that Smithfield sent her to Sioux City for one day and then denied her claim. Id. On February 14, 2022, Jima had extreme pain and was off work, but Smithfield stopped her medical treatment for the shoulder injury. Id. On March 10, 2022, Jima went to a shoulder specialist to whom she was referred to by her family doctor. Id. The specialist said that "[t]he injury was a frozen shoulder because of overuse of right hand[.]" Id. She used her insurance to pay for the specialist because Smithfield had closed her claim. Id. The specialist gave her almost one year off work. Id.

On June 21, 2022, Jima was called into Smithfield's human resources office and was told that she must quit her job and cannot work because she has lifetime injuries. Id. at 7. She claims that the company hurt her because of how she was treated. Id. She claims that these events happened because of her disability. Id.

5

On December 1, 2022, she returned to work with a restriction, but Smithfield did not allow her to work with the restriction and sent her home. Id. From December 1, 2022, to September 11, 2023, Jima would call human resources every Monday to ask if they had a job for her. Id. Smithfield told her no every time she called. Id. From February 14, 2022, to the time she filed her complaint, she has not received payment from Smithfield, and they have not paid any medical bills. Id. She claims that Smithfield denied doctors' orders for therapy treatment. Id. She also claims that employees followed her to doctor and therapy appointments as well as called to ask who went with her to appointments and who served as her interpreter. Id. She also claims that she was followed physically and by phone everywhere she went. Id. On September 13, 2023, she had surgery on her shoulder. Id. She claims that while off work, Smithfield terminated her from her job. Id.

Jima requests money damages of an unspecified amount for (1) economical, moral, physical, and psychological damages; (2) discrimination; (3) harassment; (4) abuse; (5) all that the company did to her; and (6) health concerns she faces because of their conduct. Id. at 1, 3, 4, 8. She asks for a two-year payment, but she does not explain the context or amount of the requested payment. Id. at 3. She also requests her job back. Id.

**B.    Legal Standard**

A court when screening under § 1915 must assume as true all facts well pleaded in the complaint. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also

Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. See Beavers v. Lockhart, 755 F.2d 657, 663–64 (8th Cir. 1985). Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553–63)). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation omitted) (quoting Twombly, 550 U.S. at 556).

When a district court determines a plaintiff is financially eligible to proceed in forma pauperis under 28 U.S.C. § 1915(a), the court must then determine whether the complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B). Martin-Trigona v. Stewart, 691 F.2d 856, 857 (8th Cir. 1982); see also Key v. Does, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016). The court must dismiss claims if they "(i) [are] frivolous or malicious; (ii) fail[ ] to state a claim on which relief

may be granted; or (iii) seek[ ] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

## C. Legal Analysis

Construing Jima's complaint liberally, she alleges violations of her rights under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act (ADA). See Doc. 1. Title VII prohibits an employer from discriminating against an employee "with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). The ADA prohibits covered employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

But this Court need not analyze whether Jima's allegations are sufficient to state a claim under Title VII and the ADA. The United States Court of Appeals for the Eighth Circuit has held that a party must file a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and receive a right-to-sue letter before initiating Title VII and ADA claims in federal court. Stuart v. Gen. Motors Corp., 217 F.3d 621, 630 (8th Cir. 2000); Moses v. Dassault Falcon Jet-Wilmington Corp., 894 F.3d 911, 919 (8th Cir. 2018). See also Watkins v. Smithfield Packaged Meats Corp., 2023 WL 5446899, at *1 (8th Cir. Aug. 24, 2023) (per curiam) (concluding that the district court did not err in dismissing a Title VII complaint during § 1915 screening because "the complaint made no allegations concerning exhaustion of administrative remedies."); Brooks v. Midwest Heart Group, 655 F.3d 796, 801 (8th Cir. 2011) (affirming dismissal of a Title VII claim for failure to exhaust administrative remedies). "To exhaust administrative remedies an

individual must: (1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge and (2) receive notice of the right to sue." Rush v. Ark. DWS, 876 F.3d 1123, 1125 (8th Cir. 2017) (per curiam) (citation omitted). In her complaint, Jima does not allege that she filed a charge with the EEOC. See generally Doc. 1. She also has not filed a right-to-sue letter with her complaint. See id. Thus, Jima fails to state claims upon which relief may be granted for violation of her rights under Title VII and the ADA, and her claims under Title VII and the ADA are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Construing Jima's complaint liberally, she alleges a state-law claim for wrongful discharge and possibly a claim related to mishandling and misconduct concerning her workers' compensation case. The South Dakota Supreme Court has recognized that "the public policy exception to the at-will [employment] doctrine includes a cause of action for wrongful discharge if dismissal is in retaliation for filing a worker's compensation claim." Niesent v. Homestake Mining Co., 505 N.W.2d 781, 784 (S.D. 1993). Because federal courts are courts of limited jurisdiction, Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), the court must determine if it has subject-matter jurisdiction to hear Jima's state-law claims. See Fed. R. Civ. P. 12(h)(3).

Because Jima's state-law claims do not arise "under the Constitution, laws, or treaties of the United States[,]" her state-law claims do not trigger federal question jurisdiction. 28 U.S.C. § 1331. Because federal question jurisdiction does not extend to Jima's remaining claims, this Court must determine whether diversity jurisdiction applies. Diversity jurisdiction exists if parties are completely diverse, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." OnePoint Sols., LLC v. Borchert, 486 F.3d 342, 346 (8th

Cir. 2007). The plaintiff has the burden to establish the factual basis for jurisdiction. Sheehan v. Gustafson, 967 F.2d 1214, 1215 (8th Cir. 1992). Here, Jima has not established that the parties have complete diversity or that the amount in controversy exceeds $75,000. Because Jima has not pled diversity jurisdiction, her complaint is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### III. Conclusion

Accordingly, it is

ORDERED that Jima's motion for leave to proceed in forma pauperis, Doc. 2, is granted. It is further

ORDERED that Jima's complaint, Doc. 1, is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii). It is finally

ORDERED that Jima's motion for appointment of counsel, Doc. 4, is denied as moot.

DATED April 3rd, 2024.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE